Carmen **MILLER**; Lawrence Miller, Plaintiffs, Appellants,

v.

**KENNEBEC COUNTY**; Knox County; Rockport City of; Bryan T. Lamoreau; Daniel G. Davey; Brent Davis; Jeffrey Fuller; Nancy A. Desjardin; Jane Doe, Defendants, Appellees.

No. 99–2079.

United States Court of Appeals, First Circuit.

Heard June 7, 2000.

Decided July 17, 2000.

Dale F. Thistle, with whom Law Office of Dale F. Thistle was on brief, for appellants.

Edward R. Benjamin, Jr., with whom Thompson & Bowie was on brief, for appellees Town of Rockport and Brent Davis.

William R. Fisher, with whom William R. Fisher, P.A. was on brief, for appellees Knox County, Daniel G. Davey, Jeffrey Fuller, Kennebec County and Bryan T. Lamoreau.

Before TORRUELLA, Chief Judge, LIPEZ, Circuit Judge, and SCHWARZER,* Senior District Judge.

* Of the Northern District of California, sitting by designation.

**SCHWARZER, Senior District Judge.**

The pivotal issues before us are whether qualified immunity protected Rockport Officer Brent Davis when he arrested plaintiff Carmen Miller on a restricted warrant and whether Sheriff Daniel Davey and Knox County can be held liable for permitting her to be subjected to unreasonable strip searches.

## FACTUAL BACKGROUND

Miller's ordeal began on Saturday afternoon (of the three day Patriots' Day weekend), April 13, 1996, when Davis stopped her in Rockport, Maine, for driving with an expired inspection sticker. A routine warrant check disclosed a two-year-old outstanding warrant in Kennebec County for failure to appear in court and to pay a $235 fine. The Rockport dispatcher relayed to Davis the information received from the Kennebec County dispatcher that the warrant required Miller be taken "before a judge immediately" and that it specified $235 cash bail. Davis acknowledged the information. He then arrested Miller. He directed her to park her car in a nearby parking lot, placed her six-year-old passenger in the front seat and Miller in the back seat of his police car, and proceeded to Miller's residence where he left the child with Miller's husband, Lawrence Miller. Lawrence Miller told Davis that the fine had been paid and that he had a canceled check to prove it, but Davis did not wait and instead proceeded to the Knox County jail where Rockport detained arrestees.

On arrival at the jail, a sergeant from the Knox County Sheriff's Office spoke by phone with the Kennebec dispatcher who explained that "on the top of the warrant, it says ... this warrant to be executed by bringing defendant immediately before a sitting Judge." The sergeant replied, "So, he shouldn't [have] brought her to the jail, he should've taken her to a judge." Davis then got on the phone. The dispatcher again told him, "This warrant is to be executed by bringing defendant immediately before a sitting judge." Davis replied, "Okay, I got, on mine, it's got Active warrant of arrest, then it says bail $235, to be taken to a judge." The dispatcher elaborated, "They've got it printed in big letters on top of the actual warrant," and added that it "means that it can only be executed Monday through Friday or unless you can find a Judge available today," and Davis acknowledged, "Yeah, right." Though no party recollects the substance of the conversation, Davis claims he also spoke by phone with Kennebec County Assistant District Attorney James Mitchell who advised him to detain Miller until Tuesday.

Meanwhile, as part of the intake process at the jail, Carmen Miller was required to submit to a strip search and, while naked, to squat and cough. She was then placed into a cell adjacent to male inmates. After visits from her husband and from her in-laws, she was again subjected to strip searches and required to squat naked and cough. On Monday, April 15, after several calls by Miller's attorney, her husband was permitted to bail her out.

The district court granted summary judgment for all defendants. Miller challenges the judgment dismissing her claims (1) against Officer Davis, the Town of Rockport, Kennebec County, and Sheriff Bryan Lamoreau for wrongful arrest, and (2) against Sheriff Daniel Davey and Knox County for unreasonable searches. Jurisdiction arises under 28 U.S.C. § 1291. Review of the summary judgment is de novo. *See Whiting v. Kirk,* 960 F.2d 248, 251 (1st Cir.1992).

## DISCUSSION

### I. LIABILITY FOR WRONGFUL ARREST

#### A. Officer Davis

The district court held that Davis was entitled to qualified immunity. The court assumed that it is clearly established that an arrest supported only by an arrest warrant must be conducted within the con-

straints of that warrant. It then held that the warrant in this case was ambiguous and that Davis acted reasonably in light of the warrant's confusing commands. The court thought that the direction to "bring[ ] defendant immediately before a sitting judge" contradicted the words in the body of the warrant directing the officer to "arrest said defendant and bring her before the court." It also thought that the provision for bail suggested that the defendant could be brought to jail rather than to the court. It noted that the disagreement between the Kennebec County dispatcher's interpretation and that of Assistant District Attorney James Mitchell confirmed the warrant's ambiguity.

■ Our analysis of a qualified immunity claim has two components. First, we ask whether "the right asserted by the plaintiff was 'clearly established' at the time of its alleged violation." *Burns v. Loranger*, 907 F.2d 233, 235 (1st Cir.1990). If it was, we will "assume that the right was recognized by the defendant officials." *Id.* Second, "we will deny the immunity claim if a reasonable officer situated in the same circumstances should have understood that the challenged conduct violated that established right." *Id.* at 235–36; *see also Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir.1999).

■ The first prong of the analysis is readily dispatched. While there is no case law directly relating to arrest warrants, it is self-evident that a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant. *Cf. United States v. Upham*, 168 F.3d 532, 536 (1st Cir.1999) ("It is settled law that the search and seizure conducted under a warrant must conform to the warrant.").

■ Turning to the second prong, we see no ambiguity in this warrant nor can we find as a matter of law that Davis acted reasonably in executing it. The explicit direction that "this warrant [is] to be executed by bringing defendant immediately before a sitting judge" told the arresting officer precisely the scope of the warrant and of his authority under it. Moreover, taking into account the fact that it was not a felony warrant but a bail warrant for nonpayment of a fine with bail set at $235, a reasonably competent officer would not execute it by depositing an arrestee in jail for a long weekend stay. That the restriction on this warrant may have been novel to Davis and the dispatcher does not alter our conclusion. A reasonable officer in Davis's position would have at least *attempted* to comply with the warrant's terms by seeking out a judge, the county clerk, or the county bail commissioner. Davis made no attempt whatever. Instead, after having been repeatedly told by the dispatcher that the warrant required Miller to be taken before a judge immediately, he spoke with an assistant district attorney (the content of this conversation is unknown) who had never seen the warrant and did not know that Miller claimed to have paid the fine.

Viewing the evidence in the light most favorable to Miller, there is a question of fact whether Davis's arrest and detention of Miller on a warrant requiring that she be taken before a judge immediately was objectively reasonable. *See Torres Ramírez v. Bermúdez García*, 898 F.2d 224, 228 (1st Cir.1990). Davis was therefore not entitled to qualified immunity.

**B. Kennebec County and Sheriff Bryan Lamoreau**

■ Miller contends that Kennebec County can be held liable for failing to train its personnel in the proper handling, interpretation and verification of arrest warrants. The district court dismissed the claim against Kennebec County because no Kennebec employee inflicted a constitutional injury on Miller. We agree. Miller cannot prevail on a § 1983 claim against a municipality "absent a constitutional violation by its [employees]." *Evans v. Avery*, 100 F.3d 1033, 1039–40 (1st Cir.1996). There is no evidence that training given by Kennebec County Sheriff Bryan Lamoreau

was constitutionally deficient. Kennebec County dispatcher Hatch did not cause an unconstitutional seizure of Miller because he offered the correct interpretation of the warrant. The most the evidence shows in this case is that Kennebec County personnel negligently failed to recall the warrant after the fine had been paid, but Miller does not contend that this omission rises to constitutional dimensions.

■ Miller also seeks to impose liability on Kennebec County for the unreasonable advice allegedly given to Davis by Assistant District Attorney Mitchell. Because there is no evidence as to just what advice was given or that Mitchell had the authority to act as a policy maker for the County, the claim was properly dismissed. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### C. Town of Rockport

■ Miller claims that the Town of Rockport can be held liable for failing to train its police officers in the proper execution of arrest warrants. Miller fails to offer any evidence, however, of an unlawful custom or of deliberate indifference that would bring her allegations within *Monell*, 436 U.S. at 690–95, 98 S.Ct. 2018, or *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

## II. LIABILITY FOR STRIP SEARCHES

### A. Knox County

■ The district court found that there was ample evidence from which a jury could find that the repeated strip searches to which Miller was subjected during her three-day detention in the Knox County jail were not justified by a reasonable suspicion that she was concealing contraband or weapons, particularly because the offense for which she was detained—failure to pay a fine—gave rise to no such suspicion. *See Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir.1997). We agree. The court con-

cluded, however, that none of the defendants could be held responsible. It held that assuming Sheriff Davey was the policy maker responsible for the Knox County jail, there was no evidence that he had actual knowledge that strip and body cavity searches were being conducted in contravention of the County's written policy or that the practice was so widespread that Davey should have known.

■ Miller must meet two requirements to maintain a § 1983 claim grounded upon an unconstitutional municipal custom or practice. First, the custom or practice must be attributable to the municipality, i.e., it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989). Second, the custom must have been the cause of and "the moving force" behind the deprivation of constitutional rights. *Id.* at 1157.

There was sufficient evidence for a jury to find the existence of a practice to strip search arrestees without regard to whether there was a reasonable suspicion that they concealed weapons or contraband. Jeffrey Fuller, a corrections officer assigned to the jail, testified without contradiction that, contrary to the County's written policy which conformed to constitutional standards, all arrestees unable to make bail are strip searched. Moreover, Miller's own experience being strip searched is undisputed by Knox County on summary judgment. *See id.* at 1156 ("Additional support for the existence of such a practice can be inferred from the event itself.").

Although there is no direct evidence that Sheriff Davey, as the responsible Knox County official, had actual knowledge of the jail's practice of strip searching all arrestees unable to make bail, his knowledge may be inferred. Miller offered undisputed evidence that the jail held no

more than 59 arrestees, that all persons unable to make bail were routinely strip searched regardless of whether they were suspected to have weapons or contraband, and that she herself was strip searched repeatedly during her forty-eight hour detention. The evidence is sufficient to raise a triable issue that the strip search practice was "so widespread or flagrant that in the proper exercise of their official responsibilities, the municipal policy makers should have known of [it]." *Id.* at 1157 (citations, internal quotation marks, and alterations omitted). Moreover this practice of strip searching all arrestees unable to make bail was the moving force behind the unreasonable searches of Miller. We agree with the district court, and it is not disputed, that there was no reasonable suspicion that Miller was concealing weapons or contraband.

### B. Sheriff Davey

■ To impose supervisory liability on Davey, Miller must establish that his conduct or inaction amounts to "reckless or callous indifference" of her constitutional rights and that an "affirmative link" existed between the constitutional violation and his acts or omissions. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989). Because the evidence is insufficient to meet that standard, we affirm the summary judgment for Davey.

### CONCLUSION

For the reasons stated, we reverse the judgment for Brent Davis and Knox County and remand for further proceedings consistent with this opinion. We vacate the order declining jurisdiction over the supplemental claims against those two defendants without prejudice. In all other respects, the judgment is affirmed.

Costs to be assessed against Officer Davis and Knox County. *See* Fed. R.App. P. 39(a)(3).